Next case for this morning is 21-4087, Everest Realty Group v. Century 21. Counsel for Appellant, if you would make your appearance and proceed, please. Good morning, Your Honors, and it may please the Court. Eric Christy Hansen appearing on behalf of the Appellant, Everest Realty Group, LLC. I'm going to argue today that the District Court opinion should be reversed on three separate and independent grounds. The first is that Section 30.7, which was a cleanup boilerplate provision, in addendum to an agreement to have a new office in Orem, Utah, did not delete and eviscerate the specially negotiated 10-year early termination right in the main franchise agreement. Section 30.7 is a curious clause. It purports to repeal a death, disability and retirement provision that didn't exist in our contract and inserts a new death and disability provision in its place. It's the version that it replaces. Is that in the record somewhere? I see it referenced in the complaint, but I never could find it. Well, that's because it didn't replace the provision. There was no provision in our contract. No, I understand that, but I thought maybe at some point it would have been admitted into the record since this is designed to replace that so I could compare the two. There was nothing to replace. Our contract doesn't have that provision, so there's nothing to submit in the record. I don't have another provision to give you because it replaced something that didn't exist. Well, you say in the Orem contract it's put in there. Correct. But the Orem contract is not in the record. It is in the record. Yeah, it is in the record. The Orem addendum is at Appendix 64. It's called the Location Addendum to Franchise Agreement. Doesn't the initial contract have, and I'm looking at page 48 of the appendix, doesn't it have a termination provision of sorts in it? You're talking about 16.2.3.4? You better believe it, yes. That is only for the franchisor. If you look at the introductory language, that is a right for the franchisor under paragraph 16 to terminate on certain things like death, incompetence, appointment of a conservator or a guardian. But it's not for the franchisee. You may have the right to exercise under those conditions. Yeah, the franchisor. Yes, okay. And so the provision that you're claiming was intended to be replaced by, I guess it's 30.6. 30.7. 30.7. Correct. Is not part of the universe of your agreement, either in the addendums or in the initial part of it. Correct. The complaint makes it very clear that what Century 21 was doing is they were cleaning up nationally all of their contracts. And they didn't know which ones had death, disability and retirement clauses and which ones didn't. So they were changing it based on trying to get uniformity out there on having a new death and disability clause. That was the clear intent as alleged in the complaint. Well, that's alleged in your complaint. But that raises the question of whether we should be looking at that language of your complaint. I mean, the reality is, is it the law that we're supposed to be focusing on the terms of the contract itself, the four corners of those terms? I mean, all of this sort of background, whatever, some version thereof of history regarding the contractual language itself, why is that even relevant? You look at two things. You look at the plain language of the provisions that are at issue here. And we're looking at both Section 30.7 and 25.7. And you look at the context, right, the context of the contract as a whole. So you're right. This is a plain language determination. This motion was granted at a 12B6 stage. So we're up here on a legal question. And we think that the district court got it wrong because she read the word any reason in isolation, not in context of what the clause says. And we think that the canon of construction, which the court should have applied, and Utah law, again, we're sitting in diversity here in federal court, Utah law and the Cafe Rio case made clear should apply, is the concept of es judem generis, which basically says that when you have a list of items, like here we have a list of items, of death, disability and retirement, that another clause at the end of that should be construed and interpreted under the plain meaning of that language, consistent with what comes before it. Because otherwise, why couldn't the contract have just been written that Section 25.7 is eliminated or any termination right is eliminated? That's not what happened here. You have a new office being opened in Orem. It's about a $140,000 transaction. And Century 21 takes that opportunity to insert a cleanup boilerplate provision having to do with death, disability and retirement. Nobody thought, and you can see from the context of the contracts, nobody thought that was going to eliminate a specially negotiated early termination right that gives my client the right to end this contract at 10 years versus 15 years. Okay, let me ask you about state law. One of the attributes, as I understand it, of this canon in Utah, and as best as I can tell, I don't see any of the other 49 states that have this limitation on this particular canon, is that the general catch-all term has to relate to a particular class. And there's a case that I don't think anybody cited, Turner v. Stegman Parson Companies from the Utah Supreme Court in 2012, that they were talking about the term otherwise. And they said that this canon, whatever it is. Jusum generis. Okay, I'll trust you on that. That that does not apply as a matter of law because the general catch-all is just too general. It doesn't denote a particular class. For example, the Utah Supreme Court specifically differentiated a situation where you would say other possessory interests or other dot, dot, dot, dot, where there was an attribute denoting some limitation. But when you have an adjective that says any direct object reason, there is no limitation. And so the Utah Supreme Court said in that situation, Utah is not going to apply this canon. And that's the trouble that I have with your argument. Yeah, I'm not familiar with the Turner case because I didn't see it in the briefs either. But the Cafe Rio case is also a Utah Supreme Court case. And in that case, the facts were very clear. You had a contract, some covenants between two adjacent landowners. And the question came up of, you know, one landowner couldn't build a fence or a blockage or an obstruction. And so they built a building. And the question was, was an obstruction, was a building an obstruction? And the court held no because the clause was limited to those types of things in the list. And what was particularly the general catch-all term in that case? Or obstruction. Okay, that's a perfect illustration of my question. So other obstruction is a limiting consideration. And just like if you had other possessory interest, I think Turner would acknowledge that this canon would apply. But if you don't have any limitation, other obstruction, other possessory interest, other buildings, then that's what I am having trouble with in Utah law as far as the applicability of this canon. Yeah, and I think that that would be going far beyond what the concept is intended to do, which is, I mean, literally what it means is the same kind. Right? So if you have a list of things and you have some catch-all at the end, you interpret that catch-all consistent with the list that preceded it. And that's kind of standard contract drafting. A lot of contract lawyers I've talked to have said, we do that all the time in case we've missed something. And in this case, you can see that incompetence or some kind of conservator or guardianship might be picked up by that catch-all language at the end, even though it's not listed as retirement, death, or disability. They're all similar concepts. And I think the broader picture here is very important. You have to look at where this language comes in. It takes out globally across the country a retirement, death, and disability clause and replaces it with another death and disability clause. You keep talking about this history, which has no bearing on this case as a matter of law that I'm aware of. And unless you can cite me a case that says that we should be considering your view of what Century 21 was trying to do, that is irrelevant. We're looking at the terms of this document and saying, what does that mean? And let me see if I can tease this out on Cafe Rio. Cafe Rio had another provision, not just the provision as to which there was the list, but it had another provision that explicitly excluded buildings. And that provision was read in the context of the other provision with the list, and ergo comes, well, obstruction was not meant to include a building. Well, we don't have that here. We don't have these two tandem provisions working in kind, do we? I think you actually do, and I actually think that Cafe Rio helps me there. I think that if you go to 30.7, which is on page 66 of the appendix, you have the language in 30.7, and then you have the new language, which is death, disability, and majority owner. So you have this contract language that's inserted here, which in the totality of all of 30.7 you need to read together, right? I think what Century 21 would like you to do is to ignore everything that comes after the first sentence in 30.7. But you have this long paragraph on page 3 and page 4 that talks about what the intent of the parties were in inserting this clause here. And it has nothing to do with an early termination right in 25.7, which was specifically negotiated. Well, let me be clear so I make sure I understand your argument. We have 30.7, yes. When you're making the Cafe Rio correlation, what is the other provision that you say informs this orm addendum as occurred in Cafe Rio? Yeah, it's the new language that's inserted. So in Cafe Rio you had one term that said, you know, buildings are permissible under certain circumstances. And then you had this, but you can't build these certain things, and one of them was an obstruction. And so the court looked at the contract as a whole and said, well, let's look at the contract as a whole and try and figure out what was going on here. Same job you have to do here, same job the trial court had to do. And is the as a whole that you're referring to here the full whole of 30.7? It is. Exactly right. All right. Exactly right. And in addition, it's 25.7 as well. Well, yeah, but the notion that there is within the same document something that takes out, as I understand from you now, the contextual analysis of Cafe Rio correlates here to looking at the full body of 30.7. Exactly. Okay. We're communicating. What troubles me about your argument in part is that in your own opening brief you tell us that on 10 and 11 you say one of the first error of the district court is it didn't look in context, didn't apply, you just generis in this context. Okay. And, well, the case you cite is state versus badness. You look at state versus badness and it said, well, we'll apply dictionary definitions. If they work, that's it. And then if they don't work, we'll look at these other things. Well, the court applied dictionary definitions here and they worked and therefore there wasn't a need to do anything else. So why does state versus badness help you at all? I think state versus badness shows that the Utah Supreme Court does apply this canon. That's all we cited it for. Well, it applies it, but it doesn't apply it until it determines that dictionary definitions don't work. And here the court looked at dictionary definitions, any is broad, other reason, therefore that's it. The district court didn't look at the entire context of the contract. The district court took those words out of context. In fact, the main case that the plaintiffs, the appellees rely upon, global fitness, has no words. It just has the word any reason and says we find that an unambiguous term in and of itself. It's not as judum generis case. There's no list that preceded that in the global fitness case at all. And what you have to do is look at the context of the contract as a whole. And here, and I realize I'm running short on time, you have to look at 25.7 as well. You've got to look at all of 30.7. And you've got to say, as a matter of law, is our interpretation reasonable? If it is, you can't grant a motion to dismiss. If our interpretation is completely wrong as a matter of law, then you can. I think our interpretation is more than reasonable. I think our interpretation fits with the language. If you disagree and you find there's an ambiguity between the positions, then there's an ambiguity that needs to go back on remand to be decided by the trial court. Before you sit down, and with Judge Holmes' permission, I need to get this clear before you do sit down. I'm looking at 30.7, so totally on the contract language, and it's talking about replacing something, delete and replace. And what it's replacing is any termination right granted to the franchisee under the agreement for retirement, death, disability, or any reason. And I've read that as one thing. In other contracts, there is a paragraph that deals with exactly that. Retirement, death, disability, and any reason. And we're taking this and putting it in its place, if it already exists in the contract, which it doesn't. It doesn't. Now, is that your argument? Is that one of your arguments? And that's why I ask, where in the record is the previous version, not I realize it's not part of your contract, but with other contracts that I can say, aha, that's right. Indeed, there is such a thing as a retirement, death, disability, or other reason paragraph that this is supposed to. Where is their other contract that they've intended to replace this with? It's out there with other franchisees. Okay, so it's not in the record. I don't think it's in the record unless we attach, and I can't recall, our California agreement. It might be in our California agreement, but I don't recall. It's supposedly in the Orem agreement, but I don't have that. The Orem agreement's here. Well, I don't, yeah, I have that. This is a brand new office. So it was a brand new contract for a particular office. So there was no prior agreement for that office. Well, your complaint's really vague on that point. And it says that that old language is in the Orem agreement, which I might put my hands up and say where. This Orem agreement's a new agreement. Well, I understand that. Yeah, there is no prior agreement. And would it help clarity to talk about Orem addendum? Yeah, Orem addendum. Okay. That's accurate. Over time, I'd like to reserve some time for rebuttal. We'll see how things go. Okay, thanks. Good morning, Your Honors. May it please the Court. My name is Stephanie Inbernone. I'm appearing on behalf of the appellee. Let me welcome you with a why don't you lose question. And it's going to pick up right where I left off, which is this 30.7 paragraph says that any termination right granted to franchise the end of the agreement for retirement, death, disability, or any reason is deleted. And I understand the argument. None of the previous agreements, the original or addendum one, had any termination right granted on that group of things. And therefore, 30.7 is just boilerplate that got scattered and thrown into this, but it has no effect. We should just simply disregard it because it doesn't apply. Just for some brief background and chronology with respect to the agreements between these parties, there was an original franchise agreement entered in 2011. There was an addendum entered in 2011. That's where 25.7 appears in that 2011 addendum. The Orem addendum is also the 2014 addendum where the Section 30.7 appears. That's in the Orem addendum is the 2014 addendum to the franchise agreement. The district court correctly concluded here that Section 30.7, in that 2014 addendum to the franchise agreement, deletes any prior termination right granted to Everest for any reason, and that it means exactly what it says. Any prior termination right granted to Everest for any reason has now been deleted. That would include Section 25.7, which as Everest agrees, 25.7 allows Everest on the 10th anniversary of the franchise agreement to terminate the franchise agreement for any reason. I think for purposes of clarity for myself and piggybacking on Judge Phelps' line of questioning, why should we not construe the language before the verb is, why should we construe that as being separate pieces as opposed to one unit? In other words, one could say, as I think the district court said, that disjunctively the or means it's retirement, death, disability, or any other reason. As I understood the line of questioning, one could of course also argue that that is a unit. In other words, this provision, retirement, death, disability, or any reason would be something that is deleted if it's in another contract. Right, and Everest is not arguing that. Everest is arguing that using generis limits the words any reason. Well, Everest may not be arguing that, but I think there's a line of questions about that, and I want to know what your answer would be to that line of questioning. The answer to that line of questioning would be, we would agree with the district court that if there is any provision that in the prior franchise agreement or in a prior addendum that grants a franchisee the right to terminate the contract early for retirement or grants the right to terminate the contract early for death or grants the right to terminate the contract early for disability or grants the right to terminate the contract early for any reason, all those provisions would be deleted through section 30.7. Yeah, I'm not so sure that they're not arguing that, and looking at page 7 and 8 of their brief in the state court, that's the way I read that. And maybe while opposing counsels listening to, in case he does get a rebuttal, paragraph 20, the complaint, the original franchise agreement did not contain Century 21 standard death or disability clause which, on information, Century 21 began inserting in later franchise agreements, such as Century 21's franchise agreement with Everest Realty's sister organization in 2016. That sounds like there, in some Century 21 contracts, there is indeed a paragraph that 30.7 is going to take out and not reinsert something for it. That could possibly be true, but the agreements between the two parties involved here, when we are limited to the agreements here, does not include that type of a... Precisely, and that's my point, which is that just because you have boilerplate strewn into this addendum doesn't mean that boilerplate necessarily applies. You have to go by the language, and the language at least might say, because we didn't ever have a paragraph like that, disregard. No, but there is a paragraph in the 2011 addendum, section 25.7, that allows Everest to terminate the franchise agreement early for any reason. And looking at the words, any reason, they are unambiguous. Does it say for any reason or does it just say you don't have to have any reason? If you want to quit after 10 years, make sure you're paid up and thanks for the memories. There are certain conditions present about being paid up. That is in section 25.7. But it doesn't have to show someone was incompetent or someone died. No. For some reason, for anything. Right. It doesn't have to give a reason. Correct. That's different. Section 25.7 does not require the 10-year anniversary termination provision, does not require any reason to be given at all. The franchisee can terminate the contract for any reason at that point. And that is why section 30.7, reading that section in connection with section 25.7, when reading them together, it says that any termination right that allows the franchisee to terminate the contract early for any reason is now deleted. Do you agree that Century 21 could be a lot more forthright? And instead of this sliding door thing, just say in the next addendum, 25.7 is out the door. Here's the new rule. And question whether they ever would assign that. Well, in both the 2011 and 2014 addendums, Everest made changes to those addendums. So it's not as if there was no negotiation between the parties. Everest signed an addendum in 2014 that included section 30.7. And if Everest believed that that, Everest is arguing that section 30.7 has absolutely no meaning whatsoever at all. And yet it's in an agreement that it signed. It prescribes no meaning to that entire paragraph, and yet it signed it and has no explanation why it's there, other than to say the court should ignore it and section 25.7 should remain. Thank you very much. What is your view about whether we should be taking into consideration the discussion, the language in the complaint about what the intent was in crafting 30.7 to begin with? Before we reach intent, there has to be a review of what the language says and whether the language itself is unambiguous. And in Global Fitness v. Federal Recovery, the court, District of Utah case, the court found that the words, for any reason, were themselves unambiguous. So now we have the unambiguous phrase, any reason, in this contract as well. Everest's invocation of the eusthem generis doctrine attempts to remove the plain meaning of those words. Well, Global Fitness, at least according to opposing counsel, and vaguely, I think, my memory, but certainly according to opposing counsel, was not in a string. Correct. All right then, so what? I mean, we've got to read this in the context of the paragraph in which it appears, do we not? That is part of it. But the doctrine of eusthem generis is a candidate of construction, and both the district court mentioned this, and it's in a United States Supreme Court case, the Circus City case. Candidates of construction are not conclusive and are often countered. So just Everest's entire argument is that this any reason phrase is potentially ambiguous because it should be read in connection with the words that precede it. But we don't even get there before we make a determination of whether the words any reason are ambiguous or not. But isn't there a problem there? You treat or any reason as though it's all encompassing. Why do they even say retirement debt disability then? That's just surplusage by your reading, isn't it? Why have anything other than or any reason? But before we get into intent, the first question is whether the words any reason are unambiguous or not. And we are taking the position that they are unambiguous, and therefore there is no need to go into the party's intent or whether or not this contract could have been possibly written differently. This is the contract that the party signed. You have to read it as a whole, right? You can't just pick one word out in isolation and go to the dictionary and proclaim victory. There's a string of words. Retirement debt disability, by your reading, seemed to me to be surplusage. But based on Everest's reading, the words any reason are also surplusage too, because what does that mean? If it's only limited by retirement or disability or death, which doesn't appear in the prior agreements, then what does this phrase any reason mean? Why is Section 30.7 at all in this contract if it has absolutely no meaning at all? Well, to play devil's advocate, wouldn't one plausible explanation to be some attribute like retirement debt disability, for example, any reason implicitly connoting some sort of lack of competency or something like that, the unavailability of the principal franchisee? And that goes back to the ambiguity issue. This particular doctrine is applied in, for example, in these user cases cited by plaintiffs in the GeoMet Watch versus Utah State University case. The court deemed the phrase other instrumentality of the state to be susceptible to more than one reason and then applied the doctrine. And this circuit in United States versus Broome similarly found the phrase and any other material to be susceptible to more than one reason and then applied the doctrine. It is when the words here, any other reason, if that was susceptible to more than one reasonable interpretation, then you apply the doctrine. Here, Everest wants to, does not offer an alternative reasonable explanation with respect to the phrase any reason, but then skips ahead to this doctrine to say, no, it must be limited by the doctrine. And the doctrine doesn't always apply. There's a case again cited by Everest, Sierra Club versus Kenny, and the question was whether the phrase gravel, sand, earth, or other material included timber. And when the court applied this doctrine, the court said, yes, timber is like gravel, sand, or earth. But even though it was like those other preceding materials, it deems timber not to be included within the phrase any other material in that instance. Can I probe that, though? And I want to go back to my colleague Judge Phillips' question. Aren't you really giving no credit to what Judge Phillips is inquiring about? If you look in also Judge Holmes' question, if you look at the words any reason in a vacuum, yes, it is broad, it is all-encompassing, it has no limit. But if you say, you know, based on incompetence, based on a failure to timely report to work, comma, or any reason, the employee can be terminated. Well, in the context of following these other very specific attributes, incompetence, a failure to timely report, is it at least a plausible interpretation that now we're not talking about the all-encompassing term any reason, we're talking about at least the plausible inference that it's something like the two nouns that have preceded it? And I think that goes back to whether the words themselves are ambiguous or not. Is the word any reason ambiguous or not? And it's not. And the courts have held that it's not. What work does the conjunction or disjunction for do here? We would argue that it's either if there is a prior termination right based on retirement or a prior termination right based on disability or a prior termination right based on death or a prior termination right that allows the franchisee to terminate for any reason, which is what we have here in Section 25.7, all of them would then be deleted. In other words, it or reinforces the notion that any reason is a pre-standing unit? Correct. All right. Based upon those reasons, we would expect to be requesting that the judgment below be affirmed. Thank you. Would you give him? You'll get some time. Give him a minute, please. Thank you. I appreciate that. I'll be brief because I know you have a lot to do. I think that Judge Phillips hit on it exactly. If you take the interpretation that Century 21 wants, the words retirement, death, and disability mean nothing. They're out of the contract. They're surplusage. It also, the position ignores the rest of 30.7 where there's a new death and disability provision inserted. Right? And so at the very least, if you cannot reconcile one interpretation, theirs, and our interpretation, and both are plausible, then you might have an ambiguity here which requires, again, extrinsic evidence to come in back at the trial level on remand. Why is retirement like death and disability? I mean, when you're talking about like things, why is that like those two others? In corporate law, I actually teach biz orgs. It's one of the things that typically ends a business relationship. Someone retires. Someone has a conservatorship. Someone is, you know, has a guardian appointed. Someone dies. Someone's disabled. Those things typically end partnerships and lots of business organizations. Final point, and again, I think Judge Phillips brought this up. You're out of time, so just let's end it. Thank you. Thank you. Proceed. Case is submitted. Thank you for your arguments, counsel.